**BLOCK ISLAND POWER COMPANY**

v.

**PUBLIC UTILITIES
COMMISSION et al.**

Nos. 84–181–M.P., 84–356–M.P.
and 84–360–M.P.

Supreme Court of Rhode Island.
March 4, 1986.

Peter V. Lacouture, Tillinghast Collins & Graham, Providence, for plaintiff.

John M. Roney, Roney & Labinger, Providence, Elliot Taubman, Block Island, for Town of New Shoreham.

Arlene Violet, Atty. Gen., Sheldon Whitehouse, Sp. Asst. Atty. Gen., Thomas W. Heald, Heald & Beasley, Providence, for defendants.

## OPINION

MURRAY, Justice.

This case involves two petitions to this court via statutory writs of certiorari pursuant to G. L. 1956 (1984 Reenactment) § 39-5-1 by the Block Island Power Company (company) from orders of the Rhode Island Public Utilities Commission (commission) dated March 30, 1984 [Re *Block Island Power Company*, Report and Order, Docket No. 1709 (Order No. 11202)], 59 PUR 4th 430 and July 9, 1984 [Re *Block Island Power Company*, Second Compliance Report and Order, Docket No. 1709 (Order No. 11271)]. In addition, a cross-petition from the July 9, 1984 order was filed by the town of New Shoreham (town). The above requested petitions for review were all granted and consolidated by this court.

On June 23, 1983, the company filed with the commission revised rates in accordance with § 39-3-11. The revised rates were designed to produce additional revenue of approximately $180,000.[1] In accordance with § 39-3-11, the commission held a hearing with the company, the town, and the Division of Public Utilities and Carriers as parties. Following testimony of eight witnesses over the course of a fifteen-day period, the commission issued its report and order dated March 30, 1984, which denied and dismissed the company's proposed revised rates. The commission's order, however, authorized the company to file new rates designed to recover additional revenue in the amount of $86,099. The company filed its petition for a review of

the commission's March 30, 1984 order with this court on April 6, 1984.

Subsequently the commission initiated compliance proceedings to address the issues of the company's revised rates, including a fuel-adjustment charge and the fuel-procurement method both of which the company had been instructed to revise pursuant to the March 30, 1984 order. On June 1, 1984, the commission issued a compliance order that approved of the new rates and the fuel-adjustment clause. Following further proceedings, the commission issued its Second Compliance Report and Order on July 9, 1984, which disallowed a portion of the fuel price paid by the company to its affiliate supplier, Island Services, Inc. (Island Services). In conjunction with this disallowance, the commission ordered a refund of fuel charges to the company's customers. The company filed its petition for a review of this second order with this court on July 13, 1984.

Before addressing the merits of this case, we must emphasize that this court does not sit as a factfinder in reviewing utility rate cases. *New England Telephone and Telegraph Co. v. Public Utilities Commission*, 116 R.I. 356, 362–63, 358 A.2d 1, 7 (1976). Our role is "to determine whether the commission's decision and order are lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence and substantially specific to enable us to ascertain if the facts upon which they are premised afford a reasonable basis for the result reached." *Town of New Shoreham v. Rhode Island Public Utilities Commission*, 464 A.2d 730, 732 (R.I.1983) (quoting *Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 277, 302 A.2d 757, 762 (1973)). "[T]he commission's findings enjoy a presumption of reasonableness until shown to be clearly, palpably, and grossly unreasonable by clear and convincing evidence." *New England Telephone and*

---

1. Although the company's proposed rates were to become effective on August 1, 1983, the commission, in accordance with its powers under § 39-3-11, suspended the effective date until January 1, 1984. Thereafter, this date was further suspended to March 31, 1984.

*Telegraph Co.*, 116 R.I. at 377, 358 A.2d at 15. If the commission, however, fails to provide sufficient findings and evidence upon which it has based its decision, we shall not speculate thereon or search the record for supporting evidence or reasons, nor shall we decide what is proven. *Town of New Shoreham*, 464 A.2d at 732. Instead, we shall remand the case so that the commission may have an opportunity to fulfill its obligations in a supplementary or additional decision. *Id.*

▆▆▆ The contractual arrangement between Island Services and the company has been an issue before this court in the past. *See Town of New Shoreham v. Public Utilities Commission*, 464 A.2d 730 (R.I. 1983). In that case, the facts indicate that Island Services is owned by Franklin Renz, who is also president and majority stockholder of the company. This court has expressed concern over transactions between a parent utility company and its wholly owned subsidiary:

"When a utility and its supplier are both owned and controlled by the same entity, 'the safeguards provided by arm's-length bargaining are absent, and ever present is the danger that the utility will be charged exorbitant prices which will, by inclusion in its operating costs, become the predicate for excessive rates.' " *Id.* at 732 (quoting *General Telephone Co. of N.Y., Inc. v. Lundy*, 17 N.Y.2d 373, 378, 218 N.E.2d 274, 277, 271 N.Y.S.2d 216, 220 (1966)).

Consequently, when operating expenses arise out of dealings between affiliates, the commission has a right and a duty to scrutinize closely such transactions. *Town of New Shoreham*, 464 A.2d at 733; *see* § 39-3-30 (commission empowered with authority to investigate transactions between a public utility and its affiliate). If such scrutiny reveals the existence of an unreasonable pricing practice between the utility and its affiliate, the commission could justifiably disallow that portion of the utility's expenses that reflect these excesses. Section 39-3-32. *See New England Tele-* *phone and Telegraph Co.*, 116 R.I. at 379, 358 A.2d at 15 (commission could justifiably disallow excessive expenses incurred by a utility in its transactions with an affiliate).

▆▆▆ The first contention raised by the company is that the commission failed to apply the correct standard in reviewing the reasonableness of the fuel contract between the company and Island Services. Under Rhode Island law, the standard used to review transactions between a utility company and its affiliate was established in *New England Telephone and Telegraph Co.*, 116 R.I. at 378-79, 358 A.2d at 15, and *Rhode Island Consumers' Council v. Smith*, 113 R.I. 232, 237-38, 319 A.2d 643, 646 (1974). In the latter case this court stated that New England Telephone and Telegraph met its burden of showing the propriety of its transactions with Western Electric (New England's affiliate) by presenting evidence that Western's prices were "substantially lower than the prices [charged by] other suppliers of the same products * * *." *Rhode Island Consumers' Council v. Smith*, 113 R.I. at 237-38, 319 A.2d at 646. In addition, the court also cited the fact that Western had a lower profit margin than other large manufacturing concerns to substantiate the reasonableness of the costs incurred by New England. In the instant case, however, the commission noted that the transactions in the *New England Telephone and Telegraph Co.* and *Rhode Island Consumers' Council* cases involved the sale of equipment and supplies that New England could not manufacture on its own. In comparison to New England's situation, the commission determined that the company was just as capable as its affiliate of procuring fuel on its own. As a result, the commission reasoned that this court's ruling that an affiliate transaction can be reasonable if the affiliate's prices and profits are lower than those of *similar competitors* may not be an appropriate test under these circumstances. The commission then determined that the "only alternative meth-

od of fuel procurement available to the Company which can reasonably be used as a check against the prices charged to the Company pursuant to the Island Services contract is the procurement of fuel directly by the Company itself." Noting the instructions set forth in *New England Telephone and Telegraph Co.* and *Rhode Island Consumers' Council* and the provisions of § 39-3-32, the commission developed and applied the following test: "[C]onsidering all the means, methods and sources by or from which the Company can obtain its required fuel supply, are the prices presently being charged by its affiliate Island Services reasonable?" In applying this standard, the commission found that the company was paying approximately 12% more for fuel under its own contract than it would if it purchased fuel directly. Consequently, the commission found the prices charged by Island Services to the company to be unreasonable.

Taking into account the commission's reasoning as enunciated and its broad powers under § 39-3-30, we find that the commission acted within its bounds of discretion and authority in applying a different standard to determine the reasonableness of the prices under the fuel contract.

■ The company asserts seven grounds in substantiation of its claims that the commission's findings are in error or unsupported by the evidence.[2] In addition, the town in its cross-petition alleges that although the commission disallowed particular costs incurred by the company and ordered it to pay a refund, no specific standards were set by the commission to prevent abuses by utilities in the areas of fuel procurement and financing.[3] We reiterate that the commission's findings enjoy a presumption of reasonableness until shown to be clearly, palpably, and grossly unreasonable by clear and convincing evidence. *New England Telephone and Telegraph Co. v. Public Utilities Commission*, 116 R.I. at 377, 358 A.2d at 15. These eight grounds have been thoroughly examined through our review of the commission's reports and the record, and we are of the opinion that the findings of the commission are all reasonable and substantially supported by evidence. In light of this determination, these claims raised by the company and the town are without merit and unworthy of further discussion.

■ The company also alleges that the commission's decision requiring the company to refund a portion of its May 1984 fuel expense is confiscatory and in violation of the Fourteenth Amendment to the United States Constitution and article I, section 16, of the Rhode Island Constitution. The company claims that the resulting refund has in effect reduced the price of fuel that may be recovered from the company's customers to a price that is below the direct cost incurred by the company's affiliate. The confiscation doctrine has never been applied to a utility case involving a denial of costs. The doctrine has been applied by this court in situations concerning rates of return and depreciation deficiencies. *See Valley Gas Co. v. Burke*, 446

2. These particular contentions of the company are set forth in its brief as follows:

1. "Whether the Commission properly considered the evidence as to comparable fuel prices?
2. "Whether the Commission's determination that the Company was paying 13% more for fuel than it should is supported by the evidence?
3. "Whether the attrition allowance approved by the Commission is supported by the evidence?
4. "Whether the exclusion of a portion of the Company's new office from rate base is supported by the evidence?

5. "Whether the exclusion of the Company's profit sharing expense is legal and supported by the evidence."
6. "Whether the exclusion of legal fees in the amount of $10,000 is supported by the evidence?
7. "Whether the Commission erred in excluding a portion of the Company's lubrication expense from the cost of service?"

3. The narrow issue raised by the town in its brief reads:

1. "The PUC has greater authority in controlling abuses in fuel procurement and financing than it has exercised."

A.2d 1024, 1032 (R.I.1982) and *Blackstone Valley Electric Co. v. Public Utilities Commission,* 447 A.2d 1152, 1155 (R.I. 1982). More significantly, we note that pursuant to § 39-3-13.1 the commission has the power to order refunds as a remedy for any *"unjust, unreasonable, or discriminatory acts"* committed by the utility. Since we have already upheld the commission's determination that the costs incurred by the company through its arrangement with Island Services are *unreasonable,* the commission acted within its powers under § 39-3-13.1 in ordering a refund.

Premised upon the above cited case law and statutory authorization, the commission's action in compelling the company to issue a refund is, in our opinion, not confiscatory.

Accordingly, the plaintiff's petitions for certiorari are denied and dismissed. The town's cross-petition is denied and dismissed. The writs heretofore issued are hereby quashed. The findings of the commission are affirmed, and the papers in the case are remanded to the commission with our decision endorsed thereon.