DECISION
This matter came before the Court upon a timely appeal by Providence Water Supply Board of the City of Providence, Rhode Island ("Appellant" or "Providence Water") of a September 14, 2009 decision of the Division of Public Utilities and Carriers ("Division").[1] In its appeal, Providence Water alleges that the Division's decision was in violation of statutory authority and affected by error of law, as well as arbitrary and capricious and clearly erroneous. Therefore, Providence Water requests this Court to reverse the Division's Report and Order. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
This appeal arose from a billing dispute for undercharged water supply among Karl W. Marburger ("Mr. Marburger"), Providence Water, and Narragansett Bay *Page 2 
Commission ("NBC"). After receiving a bill for water use from NBC for $63,537.46 for water consumption at Putnam Street Laundry, which he owns, Mr. Marburger filed an emergency motion to stay termination of his water supply. (Admin. Hr'g Tr., July 16, 2009 ("Tr.") at 4; NBC Exhibit No. 4.) On June 10, 2009, the Division granted this emergency motion to stay. (Tr. at 4.) An evidentiary hearing was held on July 16, 2009. Id.
At the hearing, Alberico Mancini ("Mr. Mancini"), a public utilities engineering specialist at the Division, testified that after reviewing that information in Mr. Marburger's file, he found that a new meter was installed at Mr. Marburger's property in February 1996. Id. at 13. He stated that Providence Water did, in fact, read the meter correctly after its installation.Id. Nevertheless, he found that when the reading was entered into the data system, the fixed zero was dropped. Id.
Mr. Mancini testified that as a consequence of dropping this fixed zero, Providence Water charged Mr. Marburger for only ten percent of the water he was actually using. Id. Mr. Mancini then stated that Providence Water charged him this amount until July 2006, for just over ten years. Id. According to his testimony, once a complaint was received for the emergency stay, the Division ordered Providence Water to remove the meter and install a new one in January 2007. Id. Providence Water then issued Mr. Marburger a "catchup bill for ten years." Id.
Mr. Mancini also testified that from 1989 to 1996, Providence Water was properly billing Mr. Marburger for the amount of water he used, thus for about six to eight hundred dollars per quarter.Id. at 14. Once the zero was dropped on the new meter, according to Mr. Mancini, the bill slipped to one to two hundred dollars per quarter. Id. *Page 3 
As a result, Providence Water pro-rated the account to 1996 and billed based on that sum. Id. Mr. Mancini noted that the Division had several cases in which it
 "had allowed the water company to back bill up until a ten-year period, and we felt that anything after ten years was a little — was a little tough to dish out to the customers. So we sort of made a general rule that anything after ten years would not be billed. . . . So basically, what it did [in this case] was it cut just over a year of time off the entire bill, which I believe is about $8,000." Id. at 15-16.
He also testified that when he calculated the bill, he took into account the changes of rates over time to credit about four or five thousand dollars. Id. at 16. Accordingly, Mr. Mancini stated that taking into account the final reading and the ten-year period, Mr. Marburger's current outstanding bill is correct. Id.
On cross examination, Mr. Mancini testified that Mr. Marburger did nothing wrong. Id. at 19. Thus, he testified that Providence Water Supply Board made this billing mistake. Id.
Additionally, he stated that the sewage company bases its bill on water rates; therefore, the sewage bill would not have helped Mr. Marburger know that his bill was incorrect. Id.
Joseph Murphy ("Mr. Murphy"), a senior supervisor for commercial service at Providence Water, also testified about the water meter installed in February 1996. He explained that Providence Water uses a fixed zero system on meters that are greater than one inch, like Mr. Marburger's meter. He explained this system as the following: "And on the [meter] it has six numbers, the same as you would see on the odometer of your car, the same type of dial register. And the last one is a painted-on zero, usually highlighted in blue."Id. at 26. Mr. Murphy further stated that the zero is required to be included in *Page 4 
the reading and acknowledged that if the zero was not included, the water company would only be billing ten percent of the amount of water actually used. Id.
Mr. Murphy further explained that on the February 20, 1996 bill date, the fixed zero was dropped from this date forward; consequently, Providence Water was only billing Mr. Marburger for a tenth of what it should have billed him. (Tr. at 36.) On October 13, 2006, NBC obtained a read from Mr. Marburger's meter. (Tr. at 36; Providence Water Ex. 1.) Mr. Murphy testified that if NBC finds a discrepancy between its reading and Providence Water's billing, NBC will notify Providence Water. (Tr. at 39.) Thus, in this case, NBC contacted Providence Water, whose supervisor verified NBC's reading. (Tr. at 39; Providence Water Ex. 1.) After this reading, Providence Water replaced the old meter with an automatic meter reading device ("AMR meter"). (Tr. at 39.) On February, 27, 2007, the new AMR meter was installed and started at zero. (Tr. at 39; Providence Water Ex. 1.)
The record further reflects that on March 15, 2000, Mr. Marburger's water bill was $13,499.97, which was an increase from his bills dating back to 1997 in which the maximum owed was $204.96. (Tr. at 43; Providence Water Ex. 1) Mr. Murphy testified that this bill was a result of the inclusion of the fixed zero and resulting seven digit read. Id. Mr. Murphy further testified that the $13,499.97 "must have been the amount from when the meter was installed to the present day, minus any possible adjustment.Id. Nevertheless, this number was then "zeroed out" because "a young lady or gentleman from [Providence Water] went in and saw the charge, saw the seven digit read, saw it was always done at five — six digits, went in and reentered the read, dropping the stationary *Page 5 
zero." Id. 43-44. After this incident, until July 2006, Mr. Marburger's water bills did not exceed $139.27. (Tr. at 44-46; Providence Water Ex. 1.)
Once the AMR meter was installed, Mr. Murphy became more involved in Mr. Marburger's case. Id. at 48-49. He testified that the meter tested at one hundred percent prior to its installation.Id. at 49. He further testified that he retested the meter before the hearing, and the results came to one hundred percent.Id. Mr. Murphy then stated that he then performed the audit that gave Mr. Marburger the $9618.90 credit. (Tr. at 55.) Thus, Providence Water listed the disputed charges as $49,450.15. (Tr. at 59; Providence Water Ex. 1.) The total current charges from the disputed period forward is $26,197.91. (Tr. at 59-60; Providence Water Ex. 1.) Mr. Marburger has made $16,206.58 of payments on this total. (Tr. at 60; Providence Water Ex. 1.) Thus, the record reflects that Providence Water found the total due to be $59,441.48. (Tr. at 60; Providence Water Ex. 1.)
On cross examination by Mr. Marburger, Mr. Murphy answered in the affirmative that the employees who read the meters are supposed to put the information from the meter accurately into the system. (Tr. 69-70.) Additionally, Mr. Murphy testified that from reviewing Mr. Marburger's records in 2000, when the bill was changed, it was not as a result of a complaint from Mr. Marburger; instead, a Providence Water employee "saw something wrong with a high bill. . . . [t]hey questioned it themselves." Id. at 71. Mr. Murphy also testified that taxes are calculated off of the actual bill; thus, high taxes would not have helped to inform Mr. Marburger that he was underbilled. Id. at 72.
During his testimony, Mr. Marburger stated that the property in question is Putnam Street Laundry, a Laundromat that he has operated for approximately thirty *Page 6 
years. Id. at 81, 87. He further testified that when he receives his bills he "read[s] the figures, and [he] just pay[s] it." Id. He stated that he relies on bill amounts when he computes how much to charge his customers and explained that he would go out of business if he was required to pay the total amount of $59,441. Id. at 81-82. He also testified, however, that his current prices are approximately the same as his prices from 1993 to 1996. Id. at 87. Mr. Marburger conceded that he makes a profit from this Laundromat. Id. at 87.
Following the testimony, the Hearing Officer discussed with the parties the application of the current Division Rules with respect to water utilities. (Tr. at 127.) Although one of those rules deals with the current issue, the parties agreed that those rules only apply from their effective date, after which this incident occurred.Id. As a result, the preceding version of the Division's rules control. Id. Under those rules, a Division order allowed for company backbilling for ten years prior if actual data is presented. Id.
On September 14, 2009, the Hearing Officer issued a fifty-three page decision which concluded that Mr. Marburger is liable to Providence Water only for the water consumed from February 1997 to February 2000. (Division Decision, September 14, 2009 ("Decision") at 49, 50.) In this decision, the Hearing Officer made findings of fact and conclusions of law before producing his order.
The Hearing Officer detailed the testimony of the witnesses as it is displayed in the transcript. Id. 1-30. He then discussed the applicable law, stating that the determining statute is G.L. 1956 § 39-2-1(a).[2] Id. at 30-31. According to the Hearing *Page 7 
Officer, for either utility to recover for the services that were undercharged, the sought after amounts must be based on rates that are both reasonable and just. Id. at 31. The Hearing Officer further explained that pursuant to sections 39-1-3 and 39-3-11, these rates are subject to the review and approval of the Public Utilities Commission, and its decision binds the Division. Id. at 31. He further found that under § 39-15-12, [3] Mr. Marburger is liable to Providence water for any services that his business may have used, *Page 8 
and Providence Water may recover for these services so long as the bill is determined to be both reasonable and just.
The Hearing Officer explained that the parties and Hearing Officer agreed that the Division's current Rules and Regulations Prescribing Standards for Water Utilities, which became effective in February 21, 2008, were not applicable to this case.Id. at 33. He found that the governing rules for the instant case are the Division's former Rules and Regulations Prescribing Standards for Water Utilities, which became effective March 1, 1966 because those rules were in effect when the billing errors were discovered in 2006. Id.
(citing Tr. at 126-27.) He reviewed these rules and the pertinent sections to this case.[4] The Hearing Officer also noted that under Rules 17[5] and 19(b), [6] if a meter falls *Page 9 
outside the acceptable range of accuracy, which is 98%-102%, the customer's bill must be adjusted accordingly depending on the type inaccuracy of the meter. Id. at 35-36. After discussing these two regulations, the Hearing Officer found that Mr. Marburger's meters all tested at 100%, neither fast nor slow; therefore, none of the 1966 adjustments may be applied in the instant case.Id. Additionally, the Hearing Officer found that Mr. Marbruger's meters were registering; therefore, the non-registering provision was not determinative in these circumstances. As a result, he found that the governing statutes are essential to the determination in this case. Id. at 37.
The Hearing Officer also found that Mr. Marburger is liable to Providence Water for the services he actually received from it under § 39-15-12. He found, however, that he must determine "whether it would be unjust and unreasonable to make him pay for some or all of the services consumed." Id. at 42. He concluded that the primary responsibility for the billing error lies with Providence Water because it made a billing mistake in 1997 and continued repeating that mistake for over a decade. Id. The Hearing Officer noted that the responsibility for the billing error "is compounded by the fact that *Page 10 
the utility caught the mistake once, in February 2000."Id. When it caught this mistake the Hearing Officer found that Providence Water "could have, and should have, reviewed the account to determine whether or not a mistake had really been made. . . . [and h]ad it done so, this matter would have been resolved nine years ago." Id. at 43. Thus, he found the second billing error to be "entirely the responsibility" of Providence Water. Id.
Nevertheless, the Hearing Officer found that Mr. Marburger also was not "simply an innocent victim with no responsibility at all in this matter." (Decision at 43.) He found that the record reflects that his water consumption increased by approximately fifty percent immediately after the billing error, and dropped to pre-error consumption levels as soon as Providence water billed for the mistake. Id. He interpreted these significant shifts in water consumption to evidence that Mr. Marburger recognized and took advantage of this dramatic drop in his cost of business.Id. Therefore, he found that Mr. Marburger must accept some of the responsibility for these payments, despite Providence Water's primary liability. Id.
The Hearing Officer did not accept Providence Water's bill of $59,441.48 because Providence Water failed to conduct an appropriate review and take corrective action in February 2000 when it first discovered the billing error. Id. at 45-46. As a result, the Hearing Officer found that Mr. Marburger is only required to pay for the amount of water consumed for which he was underbilled from February 1997 to February 2000. Id. at 46. He ordered Providence Water to recalculate what Mr. Marburger owes for that period of time (including taxes and related charges, but not late fees) and present him with a bill for that amount.Id. The Hearing Officer allowed Mr. Marburger forty-eight months and forty-eight equal payments to pay the underbilled amount. *Page 11 
Thomas F. Ahern, Division Administrator, approved the decision on September 28, 2009. Neither NBC nor Mr. Marburger appealed this decision. On October 9, 2009, Providence Water submitted a timely appeal to this Court. In its appeal, Providence Water argues that the Division acted in excess of its statutory authority in fashioning its decision. It further contends that the Division's ruling violates statutory provisions that prohibit discriminatory rates by utilities. Providence Water therefore maintains that the decision was arbitrary and capricious, an abuse of discretion, and clearly erroneous because the Division acted outside its statutory authority, not in accordance with any statutory standard, and was not based on the reliable, probative, and substantial evidence on the whole record.
In reply, the Division argues that the Providence Water waived its argument that the Division did not have jurisdiction because of its omission of § 39-3-13.1 and § 39-3-38. It further argues that under § 39-4-10 and § 39-4-13, the Division has authority to investigate and correct any unjust or unreasonable act. It also maintains that the order does not violate the statutory provisions prohibiting rate discrimination as a result of the provisions allowing the Division to fashion relief from unjust or unreasonable practices or acts. Finally, the Division argues that the order is neither arbitrary and capricious nor clearly erroneous because it is in accord with past practices of the Division in similar cases and was based on the Hearing Officer's findings of fact.
 II Standard of Review
This Court's review of contested administrative decisions is governed by the Rhode Island Administrative Procedures Act. G.L. 1956 § 42-35-15. This section provides: *Page 12 
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure; (4)Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g).
Under this section, the Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. InterstateNavigation Co. v. Division of Pub. Utils. Carriers.,824 A.2d 1282, 1286 (R.I. 2003) (citing Rocha v. StatePub. Utils. Comm'n, 694 A.2d 722, 725 (R.I. 1997)). As such, "if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto Body Ass'nof R.I. v. Rhode Island Dep't of Bus. Regulation,996 A.2d 91, 95 (R.I. 2010) (quoting Rhode Island Pub.Telecommunications Auth. v. Rhode Island State Labor RelationsBd., 650 A.2d 479, 485 (R.I. 1994)). Competent or substantial evidence is "`some or any evidence supporting the agency's findings.'" Id. (quoting Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)). This Court, however, conducts a de novo review of conclusions of law.Arnold v. Rhode Island Dep't of Labor Training Bd. ofReview, 822 A.2d 164, 167 (R.I. 2003) (citing JohnstonAmbulatory Surgical Assocs. v. Nolan,755 A.2d 799, 805 (R.I. 2000)). *Page 13 
 III Analysis A The Division's Statutory Authority for the Order 1 Waiver of Jurisdictional Argument
The Division asserts that Providence Water's omission of any discussion of § 39-3-13.1 and § 39-3-38 waives its jurisdictional argument that the Division does not have the power to equitably allocate an underbilled water bill. In response, Providence Water contends that it did not waive its jurisdictional argument; instead, it argues that the Division's application of § 39-3-13.1 is waived because the Division did not cite to that section in the Order.
In essence, both parties urge the application of the raise-or-waive rule to this administrative appeal. Under this rule, the Rhode Island Supreme Court "will not consider on appeal an issue that was not raised before the trial court." Harvey Realty v.Killingly Manor Condo. Ass'n, 787 A.2d 465, 466-67 (R.I. 2001) (quoting Rhode Island DepositorsEcon. Prot. Corp. v. Rignanese,714 A.2d 1190, 1196-97 (R.I. 1998)). The raise and waive doctrine not only encourages the resolution of issues at trial, but also promotes fairness as it allows counsel opportunity to respond to all claims. East Bay Cmty. Dev. Corp. v. Zoning Bd. of Review,901 A.2d 1136, 1152-53 (R.I. 2006) (quoting State v. Burke522 A.2d 725, 731 (R.I. 1987)). Furthermore, the failure to brief an issue on appeal results in a waiver of that issue. State v.Sifuentes, 996 A.2d 1130, 1134-35 (R.I. 2010) (quoting S. Ct. R. App. P. 16(a)) (citing Stebbins v. Wells,818 A.2d 711, 720 (R.I. 2003)); see also James J.O'Rourke, Inc. v. Industrial Nat'l Bank of R.I.,478 A.2d 195, 198 (R.I. 1984) ("Claims of error that are unsupported by either argument or citation *Page 14 
of authority are entitled to no consideration on review" (citingMercurio v. Fascitelli, 116 R.I. 237, 354 A.2d 736 (1976))).
The Rhode Island Supreme Court has never explicitly found that the raise-or-waive doctrine applies to the Superior Court's review of all issues in administrative proceedings. East BayCmty. Dev. Corp., 901 A.2d at 1153. But seeRandall v. Norberg,121 R.I. 714, 721, 403 A.2d 240, 244 (1979) (finding that "the failure to raise a constitutional issue at the administrative level does not preclude its litigation in Superior Court"). The United States Supreme Court has recognized the raise-or-waive rule in administrative appeals as "administrative issue exhaustion," a distinct requirement from that of the "exhaustion of remedies." Sims v. Apfel,530 U.S. 103, 107 (2000). The United States Supreme Court requires this "[a]dministrative issue exhaustion `as a general rule' because it is usually `appropriate under [an agency's] practice' for `contestants in an adversary proceeding' before it to develop all issues there." Id. at 109 (second alteration in original) (quoting United States v. L.A. Tucker Truck Lines,344 U.S. 33, 36-37 (1952)). Under this general rule, administrative issue exhaustion is most significant "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding." Id.
In the present case, it is unnecessary to establish an administrative issue exhaustion rule because both of the parties properly preserved the disputed issues for appeal. First, Appellant's failure to cite to § 39-3-13.1 and § 39-3-38 to prove that the Division did not have the power to fashion this equitable remedy does not waive that argument, even if the raise or waive rule is applied. The lack of this citation in its brief does not rise to the level of an argument that is unsupported by citation of authority or a *Page 15 
failure to brief an issue. Appellant spends approximately five pages arguing that the
Division acted in excess of its statutory authority in its memorandum of law in support of its appeal. See Appellant's Mem. Supp. Appeal 6-11. In this argument, Appellant cites the statutes mentioned in the Division's decision, as well as a number of cases. See id.
Although § 39-3-13.1 and § 39-3-38 seem relevant to the case, Providence Water's lack of citation of these specific statutes does not cause its argument to be so deficient that it is waived.See Stebbins, 818 A.2d at 720-21 (finding that an appellant did not waive its challenge to the court's grant of summary judgment on certain claims because those issues were addressed in prior statements on appeal and argued in prebriefing and supplemental show-cause statements); East BayCmty. Dev. Corp., 901 A.2d at 1153.
Furthermore, the Division's argument on jurisdiction is not waived as a result of its reliance on § 39-3-13.1, even if the raise-or-waive doctrine is applied to agency appeals. Section 39-3-13.1 states in pertinent part:
 "The division shall have the power, when deemed by it necessary, to provide remedial relief from unjust, unreasonable, or discriminatory acts, or from any matter, act, or thing done by a public utility which matter act or thing is in chapters 1 — 5 of this title, or otherwise prohibited or declared to be unlawful, to order the public utility to make restitution to any party or parties individually or as a class, injured by the prohibited or unlawful acts, by way of a cash refund, billing credit, or rate adjustment, or any other form of relief which the division may devise to do equity to the parties. . . ."
The Division not only cited this statute in its temporary restraining order, but it also referred to this language in its decision. For example, the Hearing Officer stated that he must determine "whether the amounts being sought by [Providence Water] and NBC from Mr. Marburger are `reasonable and just' . . . or whether they are an `unjust or *Page 16 
unreasonable charge for the service.'" (Decision at 41.) Thus, these remedial measures and unjust and unreasonable acts created the bases of the decisions. Therefore, this issue is not waived because neither litigant could be surprised on appeal when this statute was cited, a primary purpose of the raise-or-waive doctrine.See Sims, 530 U.S. at 103 (stating that it is essential "that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence").
 2 The Division's Statutory Authority
Appellant argues that the Division applies an overly broad interpretation of its statutory powers and therefore acted outside its statutory authority by ordering its equitable remedy. It contends that the Division's reliance on § 39-4-1, § 39-4-3, § 39-4-10, and § 39-4-13 in delineating responsibility for the error is unfounded because agencies cannot fashion an equitable remedy when none is provided in the statute. In response, the Division asserts that it has plenary power and is expressly vested with the power to devise "remedial relief" from unjust acts to do equity for the parties under § 39-3-13.1. Appellant maintains that this section is not applicable to the instant case because the billing error and catchup bill were neither "unjust, unreasonable, or discriminatory" nor "prohibited or declared to be unlawful."
The General Assembly vested in the Public Utilities Commission and the Division "the exclusive power and authority to supervise, regulate, and make orders governing the conduct of companies offering to the public in . . . water supplies for the purpose of . . . protecting them and the public against improper and unreasonable rates, tolls and charges by providing full, fair, and adequate administrative procedures and remedies." Sec. 39-3-13.1. *Page 17 
Based on this statute, our Supreme Court has explained that the Public Utilities Commission has "broad authority" to supervise public utilities. In re Narragansett Bay Comm'n General RateFiling, 808 A.2d 631, 635 (R.I. 2002) (citing In re IslandHi-Speed Ferry, 746 A.2d 1240, 1244 (R.I. 2000)). Thus, this Court finds it reasonable to infer that under this statute, the Division also has this broad authority. See id. (finding this broad authority pursuant to §§ 39-1-1(c) and -3(a) which both list the "commission and the division"); see alsoNarragansett Elec. Co. v. Harsch, 368 A.2d 1194 (R.I. 1977) (finding that the Division has broad regulatory powers).
This Court adheres to the "well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied." Auto BodyAss'n of R.I., 996 A.2d at 97 (citations omitted). Thus, although statutory interpretation is an interpretation of law, when reviewing an agency's interpretation of its statute, the determination is limited to whether the agency's interpretation was "clearly erroneous or unauthorized." Seeid. (citations omitted). In this case, as the Division is interpreting statutes whose administration and enforcement have been entrusted to it, this Court will review this interpretation only to find whether it is clearly erroneous or unauthorized. Seeid.
Appellant also argues that § 39-4-1 and § 39-4-3, cited by the Hearing Officer do not apply in this case because those sections only apply to investigations of personal injuries and deaths and complaints "made against any public utility by any city or town *Page 18 
council, or the water supply management division of the department of environmental management, or by any corporation or by any twenty-five qualified electors." Sec. 39-4-1 and Sec. 39-4-3. It argues that these sections do not provide the Hearing Officer statutory authority to apply an equitable remedy; instead, Appellant maintains, these sections give the Division only the power to investigate. Appellant further contends that § 39-4-10 also does not apply to these circumstances because that section applies only to "A hearing and investigation had under the provisions of this chapter," which, it alleges, does not include this type of claim and remedy. Sec. 39-4-10.
It is established that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." In re Kent County Water Authority Change RateSchedules, 996 A.2d 123, 130 (R.I. 2010) (quotingWaterman v. Caprio,983 A.2d 841, 844 (R.I. 2009)). Section 39-4-10 provides:
 "[i]f, upon a hearing and investigation had under the provisions of this chapter, the division of public utilities and carriers shall find that any regulation, measurement, practice, act, or service or any public utility is unjust, unreasonable, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of chapters 1 — 5 of this title . . . the division shall have the power to substitute therefore such other regulations, measurements, practices, service, or acts, and to make such order respecting such changes in the regulations, measurements, practices, service or acts, as shall be just and reasonable, and the power to order refunds as provided for in § 39-3-13.1."
This section is unambiguous; therefore, this Court will interpret the statute literally. Interstate Navigation Co.,824 A.2d at 1289. This rule allows the Division to issue orders regulating public utilities if it finds that a "practice, act, or service . . . is unjust, *Page 19 
unreasonable . . . or otherwise in violation of any provisions of chapters 1-5 of [title 39]." Sec. 39-4-10. Thus, an existing practice, act, or service which is unjust or unreasonable permits the Division to issue an order. Interstate Navigation Co.,824 A.2d at 1289. Furthermore, this statute permits the Division to make an order regarding these practices as "shall be just and reasonable" and to issue refunds as provided in § 13-3-13.1
The portion "upon hearing and investigation had under the provisions of this chapter" explains that this statute applies to any hearing and investigation that is held pursuant to chapter 4, title 39 of the Rhode Island General Laws. This chapter includes more than section 1 and 3, which describe the special procedure for certain types of complaints. Indeed, it also contains procedure for hearings and a section for summary investigation, a formal investigation, and notice and proceedings on the motion of division. See Secs. 39-4-13 through 39-4-15. Thus, investigations can begin not only pursuant to § 39-4-1 and § 39-4-3, but also sua sponte by the Division when it believes "that any of the rates,[ ]charges . . . charged, demanded, exacted, or collected by any public utility are in any respect unreasonable, or unjustly discriminatory or otherwise in violation of this title." Id. In that circumstance, the Division "shall summarily investigate the same with or without notice as it shall deem proper." Sec. 39-4-13. The Hearing Officer, in fact, identified this provision as the provision under which it properly investigated this problem. Reading these statutes' plain language, this Court cannot find that the Division's interpretation of its statutes was clearly erroneous because it interpreted its statutes as written. See Auto Body Ass'n of R.I.,996 A.2d at 97 (finding that a trial justice should defer to an agency's interpretation of a statute entrusted to its administration even if the justice would have interpreted differently). Accordingly, the *Page 20 
Division did not act outside its statutory authority when finding that it had the power to investigate and hold a hearing regarding this disputed bill.
Appellant also argues that the Division acted in excess of its statutory authority because it does not have the power to fashion an equitable remedy, as it did in this case. Appellant further argues that § 34-3-13.1 allows the Division only to order restitution when the utility commits an unlawful or prohibited act.
Section 39-3-13.1 states that the division has the power, when it deems necessary "to provide remedial relief from unjust, unreasonable or discriminatory acts . . . to order the public utility to make restitution to any party or parties . . . or any other form of relief which the division may devise to do equity to the parties." Under this statute, the Division has "broad powers" to order refunds or other relief to do equity to the parties. Sec. 39-3-13.1; Narragansett Elec. Co. v. Burke,505 A.2d 1147, 1148 (R.I. 1986). The Rhode Island Supreme Court has held that pursuant to this section, the Division has "the power to order refunds as a remedy for any `unjust, unreasonable, ordiscriminatory acts' committed by the utility. Since . . . the costs incurred by the company through its arrangement with [the utility] are unreasonable, the commission acted within its powers under § 39-3-13.1 in ordering a refund." Block IslandPower Co. v. Public Utils. Comm'n, 505 A.2d 652, 656 (R.I. 1986). Therefore, here, upon a finding that the bill was unreasonable or unjust, or discriminatory, the Division was not clearly erroneous in fashioning remedial relief. See § 39-3-13.1; NarragansettElec. Co., 505 A.2d at 1148; Block Island Power Co.,505 A.2d at 656. As a result, this Court cannot find that the Division acted in excess of its statutory authority in ordering an equitable remedy. *Page 21 
 B Prohibition Against Discriminatory Rates
Additionally, Appellant contends that the Division's decision was in violation of statutory provisions that prohibit discriminatory rates by public utilities. It asserts that a majority of courts outside Rhode Island have found that customers who are underbilled cannot escape relief from the "catch-up bill" because that would amount to a prohibited discriminatory action by the utility. The Division responds that these other jurisdictions do not have a section similar to § 39-3-13.1, which allows for remedial relief from unjust or unreasonable acts. It also maintains that this relief is permitted under 39-2-5(2), which lists exceptions to the rate making.
Sections 39-2-2[7] and 39-2-4[8] prohibit rate discrimination and any acceptance of unlawful rebates or advantages, respectively. Notably, the Rhode Island Supreme Court *Page 22 
has never held that under this statute, charging customers different rates without a cost differential proves that "the company invariably has engaged in price discrimination." Energy Councilof R.I. v. Public Utils. Comm'n, 773 A.2d 853, 861 (R.I. 2001). Instead, our Supreme Court has held that these provisions "merely prohibit varying rates for a like and contemporaneous service provided under substantially similar circumstances or rates that confer an undue or unreasonable preference or advantage upon a customer group." Id. at 861-62. In Energy Council of RhodeIsland, our Supreme Court emphasized the importance of "substantially similar circumstances and like conditions" when finding that the different rates for electricity between residential and nonresidential customers was not discriminatory.Id. at 862.
Additionally, § 39-2-5 provides an exception to these prohibitions against discrimination. It specifically provides the following:
 "With the approval of the division any public utility may give free . . . service, upon such conditions as the public utility may impose, or grant special rates therefore . . . to any special class or classes of persons, not otherwise referred to in this section, in cases where the same shall seem to the division just and reasonable, or required in the interests of the public, and not unjustly discriminatory." Sec. 39-2-5(2).
In this case, Mr. Marburger's situation was not similar to that of other customers. Indeed, he was being underbilled for over ten years. Thus, the agency's conclusion was not in violation of § 39-2-2 and § 39-2-4 because it provided remedial relief to Mr. Marburger's *Page 23 
unique circumstances in response to which it found the agency's actions to be unreasonable and unjust. See
Secs. 39-2-5(2), 39-3-13.1.
Appellant further argues that the Division did not base its decision on an articulated standard of law under these sections, and therefore, its decision is arbitrary and capricious. This Court will uphold administrative decisions under the arbitrary and capricious standard "as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by substantial evidence."Goncalves v. NMU Pension Trust,818 A.2d 678, 682-83 (R.I. 2003) (citing Doyle v. Paul RevereLife Ins. Co., 144 F.3d 181, 185 (1st Cir. 1998); Coleman v.Metropolitan Life Ins. Co., 919 F. Supp. 573, 581 (D.R.I. 1996)). Moreover, courts may not substitute their own judgments for that of the agency. Id. at 683; see also Rocha,694 A.2d at 725-26 ("[T]he Superior Court is precluded from substituting its judgment for that of the agency. . . ." (citingSartor v. Coastal Resources Mgmt. Council,542 A.2d 1077, 1083 (R.I. 1988))).
In the present case, the Division's order was not arbitrary and capricious because it was rational, logical, and supported by substantial evidence. Specifically, the Hearing Officer fashioned a decision that was within the statutory power of the division and based on the facts. He used the facts to delineate responsibility for the error and fashion an equitable remedy. Although more than one inference may be drawn form the record evidence, this Court will not substitute its judgment for that of the Division as its decision was not "completely bereft of any competent evidence." SeeRocha,694 A.2d at 725-26 (citing Sartor, 542 A.2d at 1083)). *Page 24 
 C The Division's Decision Based on its Findings
Finally, Appellant argues that the Division's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the record because it based its decision on Providence Water's clerical error in 2000. The Hearing Officer, however, made extensive findings of fact, which support his conclusion. He then explained each party's responsibility for the billing errors as evidenced by these facts. The Hearing Officer subsequently fashioned the order which required Mr. Marburger to pay until the first instance that Providence Water caught the billing mistake in 2000, and Providence Water to pay any undercharged payment after that. As competent evidence exists in the record to support the Division's conclusions, this Court is required to uphold the Division's order. See Auto Body Ass'n of R.I.,996 A.2d at 95. Accordingly, the Division's conclusion was not clearly erroneous.
 III Conclusion
After a review of the entire record, this Court finds that the Division's order was not in excess of its statutory authority, affected by error of law, arbitrary and capricious, or clearly erroneous. Substantial rights of the Appellant were not prejudiced. Accordingly, this Court affirms the Division's order and denies Providence Water's appeal. Counsel shall submit an appropriate order for entry.
[1] Neither the Narragansett Bay Commission nor Mr. Marburger, both originally parties to this case, appealed the Division's decision. Accordingly, the Court will omit any issues which pertain exclusively to those parties.
[2] This statute provides in pertinent part that:
 "The rate, toll, or charge, or any joint rate made, exacted, demanded, or collected by any public utility for the conveyance or transportation of any property, including sewage, between points within the state, or for any . . . service rendered or to be rendered in connection therewith, shall be reasonable and just and every unjust or unreasonable charge for the service is prohibited and declared unlawful, and no public utility providing . . . water . . . produced or transmitted, distributed, delivered, or furnished shall terminate the service or deprive any . . . building, or whatsoever of service if the reason therefore is nonpayment of the service without first notifying the user of the service, or the owner or owners of the building as recorded with the utility of the impending service termination by written notice at least ten (10) days prior to the effective date of the proposed termination of service." Sec. 39-2-1(a).
[3] Section 39-15-12 provides the following:
 "The owner of any . . . building . . . shall be liable for the payment of the price or rent or rates fixed by any town, city, or incorporated fire district or water district for the use of water furnished by such town, city, fire district, or water district to the owner . . . of the building . . .; and the price, rent, or rates shall be a lien upon the . . . building . . . in the same way or manner as taxes assessed on real estate are liens, and, if not paid as required by the town, city, fire district, or water district, shall be collected in the same manner that taxes assessed on real estate are by law collected. . . ."
[4] These included: Rule 5, which requires that all water sold shall be upon the basis of metered volume; Rule 6, which mandates the registration devices and "[w]here a constant or multiplier is necessary to convert the meter reading to cubic feet or gallons, the constant shall be plainly marked on the face of the meter."
[5] Rule 17 states the following:
 "All meters shall be tested and calibrated in accordance with the requirements set forth herein. No meter shall be placed in service or permitted to remain in service if the error of registration determined in accordance with 17B exceeds 2%. At the option of the utility the larger size meters may be tested in place after installation."
[6] Rule 19(b) provides:
 "b. Adjustments
 (1) Fast Meters
 Whenever as the result of a test made by the utility of the Division at the request of the customer, a meter is found to register in excess of 10% of the correct amount, the utility shall refund to the customer an amount equal to the charge for the excess billed for the previous twelve (12) months or for a period equal to one-half of the time elapsed since the last test, whichever is the shorter period. However, if the time when the error first developed or occurred can be definitely fixed, the amount to be refunded is to be based thereon.
 (2) Slow Meters
 Whenever as the result of a test made by the utility or the Division at the request of the customer, a meter is found to be registering less than 90% of the correct amount, the utility may make a charge to the customer for the unbilled amount supplied for the previous twelve (12) months, or for a period equal to one-half of the time elapsed since the last test, whichever is the shorter period.
 (3) Non-Registering Meters
 If a meter is found which does not register, the bill for the period of non-registration shall be based upon information recorded prior or subsequent to the period of non-registration, and any other pertinent information supplied by the customer or known utility."
[7] This section provides in pertinent part:
 "If any public utility or agent or officer of a public utility . . . shall directly or indirectly by any device whatsoever, or otherwise, charge, demand, collect, or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it in . . .or furnishing of heat, or water . . . than that prescribed in the published schedules or tariffs then in force . . . or than it charges, demands, collects, or receives from any other person, firm, or corporation for a like and contemporaneous service, under substantially similar circumstances and conditions, the public utility shall be guilty of unjust discrimination which is hereby prohibited and declared to be unlawful. . . ." Sec. 39-2-2.
[8] Section 39-2-4 states the following:
 "It shall be unlawful for any person, firm, or corporation knowingly to solicit, accept, or receive any rebate, concession, or discrimination in respect to any service in, affecting, or relating to . . . furnishing of heat, or water . . whereby the service shall, by any device whatsoever or otherwise be rendered free, or at a less rate than that named in the published schedules and tariffs in force, as provided therein, or whereby any service or advantage is received other than is herein specified. . . ."